IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE

| | |
|---|---|
| LUCY M. DILLARD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:14-cv-00039 |
| SIGNATURE HEALTHCARE FENTRESS COUNTY, a SUBSIDIARY AND ASSUMED NAME OF LP JAMESTOWN, LLC, AND SIGNATURE HEALTHCARE, LLC, | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
TO STAY THE PROCEEDINGS AND COMPEL ARBITRATION**

### I.  Introduction

Defendants[1] have moved the Court to dismiss (or alternatively, to stay) these proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and to compel arbitration. Dillard agreed in writing when she began her employment at LP Jamestown, LLC d/b/a Signature HealthCARE of Fentress County to submit all claims relating to "recruitment, employment with or termination" to "final and binding arbitration in accordance with the Federal Arbitration Act . . . in accordance with the rules of the American Health Lawyers Association ("AHLA")." ("the Arbitration Agreement"). By filing her lawsuit (and then refusing to dismiss

---

[1] Dillard has sued the wrong entities. Her actual employer was Signature Payroll Services, LLC. *See* Declaration of Kristie Johnson at ¶ 10. There is no legal entity known as "Signature HealthCARE Fentress County, a Subsidiary and Assumed Name of LP Jamestown, LLC." *Id.* The correct legal name of the facility at which Plaintiff worked (which is not her employer) is "LP Jamestown, LLC d/b/a/ Signature HealthCARE of Fentress County", which is a wholly owned subsidiary of Signature HealthCARE, LLC. *Id.* For purposes of this Motion, all of the Signature entities are collectively referred to as "Signature" or "Defendants." All "Signature" entities, subsidiaries, and employees are subject to the Arbitration Agreement. *Id.*

1

it after Signature's counsel provided a copy of the Arbitration Agreement to her lawyer), Dillard has failed to honor her contractual obligations, for which she received valuable consideration, to pursue her employment claims only through final and binding arbitration. As a matter of law, Dillard cannot properly pursue her Family and Medical Leave Act ("FMLA"), Tennessee Human Rights Act ("THRA"), Tennessee Handicap Act, retaliatory discharge and other claims related to her employment before this or any other court. Defendants' Motion should be granted as a matter of law.[2]

## II. Brief Summary of the Factual and Procedural History

Signature hired Dillard as a Registered Nurse on January 27, 2011. Declaration of Kristie Johnson ("Johnson Decl.") at ¶ 3. During her employment orientation, Signature provided her with and gave her the opportunity to review and ask questions about its employee handbook (called the "Stakeholder Handbook") and the Arbitration Agreement. *Id.* Dillard acknowledged in writing her receipt of and agreement to be bound by both. *Id.* at ¶¶ 5, 6 and Exs. 2-3. The Arbitration Agreement is simple, straightforward and mutual in its application, scope and obligations. In exchange for employment, Dillard and Signature agreed as follows:

> All claims relating to your recruitment, employment with, or termination of employment from the Company shall be deemed waived unless submitted to final and binding arbitration in accordance with the Federal Arbitration Act ("FAA") or, if a court determines that the FAA does not apply, by any applicable state arbitration act, in accordance with the rules of the American Health Lawyers Association ("AHLA").

---

[2] If the Court finds any disputed material factual issue regarding the enforceability or applicability of the Arbitration Agreement to Dillard's claim, Defendants request that the Court conduct a hearing to decide disputed facts on the issue of the "making of the arbitration agreement" and its application. *See* 9 U.S.C. § 4.

*Id.* at Ex. 2. Immediately preceding Dillard's signature, the Arbitration Agreement advises and makes clear its import:

> **PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT, AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.**

*Id.* (emphasis in original). Similarly, the Stakeholder Handbook makes clear that:

> All disputes between Stakeholders and the company or its management, which are not resolved through the Conflict Resolution procedure, must be submitted to binding arbitration. As a condition of employment, applicants and Stakeholders shall sign an Arbitration Agreement.
>
> Signed acknowledgement of receipt of the Stakeholder Handbook shall serve as acceptance and understanding of this condition of employment, thereby binding Stakeholders to the Arbitration Agreement.

*Id.* at Ex. 4.

In agreeing to be bound by the alternative dispute resolution process, both Dillard and Signature preserved all of their substantive rights ("The arbitrator shall have the authority to award the full range of remedies that could be awarded by a court sitting in the applicable jurisdiction and applying relevant law."), chose a neutral forum in which to resolve their disputes ("final and binding arbitration . . . in accordance with the rules of the American Health Lawyers Association") and agreed to waive any right to a jury trial ("**BOTH PARTIES WAIVE TRIAL BY JURY**") (emphasis in original). *Id.* at Ex. 2. This choice, freely and voluntarily entered into by Dillard and her employer after full disclosure and an opportunity to seek advice of counsel before signing ("**YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT**") (emphasis in original), *id.,* is a binding and enforceable contractual obligation on all parties to it.

Dillard has not honored her agreement to arbitrate all her claims against Signature. Instead, she filed her initial Complaint in the Circuit Court for Fentress County, Tennessee. *See* ECF Doc. No. 1-1. On March 19, 2014, counsel for Signature called to discuss and then emailed counsel for Dillard a copy of Dillard's signed Arbitration Agreement. Signature's counsel requested that Dillard voluntarily dismiss her state court claims and file her claims with the AHLA. Dillard did not respond. Instead, she filed an Amended Complaint on April 8, 2014, alleging for the first time that Dillard's signed Arbitration Agreement is invalid. *See* ECF Doc. No. 1-2 at ¶ 3, p. 2-6. Signature removed Dillard's case to this Court on April 14, 2014. This Motion follows.

Having entered into the Arbitration Agreement for which she received valuable consideration and upon which her employer relied, Dillard cannot now avoid her obligations thereunder. Her Amended Complaint must be dismissed as a matter of law and any resolution of her employment claims must occur, if she chooses to pursue them, pursuant to the Arbitration Agreement.

### III.  Legal Analysis

Dillard is required to litigate her claims in the arbitral forum because she voluntarily and knowingly signed both an Arbitration Agreement and the Stakeholder Handbook, acknowledging her commitment to do so. She does not want to honor her commitment, claiming that she should not have to do so because: (1) Signature "did not provide Dillard with a copy of this arbitration agreement at the time of her hire, nor was she given an opportunity to read and examine" it; (2) the Arbitration Agreement "does not specifically mention the Family and Medical Leave Act"; (3) the Arbitration Agreement is "one of adhesion" and "unconscionable . . . whereby [Dillard] was induced either by fraud or misrepresentation" or it "unconscionably deprives Plaintiff of her

. . . rights to a trial," and (4) the Arbitration Agreement is "cost prohibitive to . . . otherwise again deny the Plaintiff due process." *See* ECF Doc. No. 1-2, ¶ 3, p. 2-6. She is wrong as a matter of undisputed fact and law.

First, Dillard does not dispute in her Amended Complaint that the signature on the Arbitration Agreement is hers. Dillard was given ample opportunity to review and ask questions about the Arbitration Agreement during orientation when she did sign it. She received valuable consideration, her employment, for it. As a matter of law, the Arbitration Agreement is a binding and enforceable contract.

Second, the Arbitration Agreement covers all of Dillard's employment-related claims. That it does not specifically mention the FMLA, THRA, the Tennessee Handicap Act, and retaliatory discharge is of no legal consequence because the parties agreed to resolve "all matters directly or indirectly related to [Dillard's] recruitment, employment, or termination of employment by the Company," including "any and all claims under federal, state, and local laws and common law." *See* Johnson Decl. at Ex. 2. The FMLA, the THRA, the Tennessee Handicap Act, and retaliatory discharge claims clearly are "matters related to [Dillard's] employment" "under federal [and] state . . . laws."

Third, the Arbitration Agreement is neither adhesive nor unconscionable as a matter of Tennessee law. It is sufficiently clear to waive a jury trial, it is mutually binding on both parties, and it does not offend public policy.

Fourth, Dillard's argument that the costs associated with arbitration would deny her due process rights is moot. Dillard has produced no proof that she is unable to pay the costs of arbitration. However, even if she were to do so, the Court should not deny Signature's Motion to Compel Arbitration, and instead, it should require Signature to pay the costs of the arbitration per
5

AHLA Section 10.5(a), stating, in part: "Regardless of any contract . . . , the employer will pay the arbitrator's fees and expenses. . . ."[3]

> A. Dillard Agreed In Writing to Arbitrate Any Disputes Related to Her Employment.

The parties agreed in writing that the Federal Arbitration Act ("FAA") governs the interpretation and enforcement of their agreement to arbitrate all disputes related to Dillard's employment. Johnson Decl. at Exs. 2-3. Dillard does not dispute that the signature on the Arbitration Agreement is hers. *See Palmer v. Prevost Car, Inc.,* 2006 WL 2035710, *8 (M.D. Tenn. July 17, 2006) (enforcing arbitration agreement and noting plaintiff's signature at the end of the contract evidence her understanding of the agreement and her intent to be bound by it.)[4] The FAA provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. No such grounds exist here.

In enacting Section 2 of the FAA, Congress declared a national policy favoring arbitration and required all courts to enforce agreements to arbitrate rigorously. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991). Recognizing this legislative mandate, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). The Supreme Court also has emphasized that disputes in the employment context are no different than any other under the FAA: agreements to arbitrate employment-related claims are broadly enforceable. *See 14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 248 (2009); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119-20 (2001).

---

[3] Copies of the AHLA Rules of Procedure for Arbitration may be found at http://www.healthlawyers.org/hlresources/ADR/Documents/DRS_New%20Rules.pdf.

[4] Copies of unreported opinions are reproduced in the Appendix.

Within the FAA's mandate of broad enforceability of arbitration agreements, state contract law principles govern whether the parties have a contractually valid agreement to arbitrate in any given case. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The requisites for forming a valid contract in Tennessee are well settled. Contracts require an offer, *see Mason v. Pearson*, 668 S.W.2d 656, 660 (Tenn. Ct. App. 1983), an effective acceptance of the offer, *see Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984), and consideration. *See Campbell v. Matlock*, 749 S.W.2d 748, 752 (Tenn. Ct. App. 1987). As evidenced by its plain language and execution by Dillard, the Arbitration Agreement meets the essential elements of an enforceable contract under Tennessee law, and similar agreements have been routinely enforced by federal district courts in Tennessee and the Sixth Circuit Court of Appeals. *See*, e.g., *Howell v. Rivergate Toyota, Inc.*, 2005 U.S. App. LEXIS 15313, *16-17 (6th Cir. July 25, 2005) (affirming district court's dismissal of the plaintiff's claims because he had signed a mandatory arbitration agreement); *Hardin v. Morningside of Jackson, L.L.C.*, 425 F. Supp. 2d 898, 908 (W.D. Tenn. 2006) (enforcing arbitration agreement because it "was not a contract of adhesion and [the plaintiff] knowingly and voluntarily consented to [its] terms"); *Maples v. Sterling, Inc.,* 2002 WL 1291239, at *6 (W.D. Tenn. Apr. 22, 2002) (enforcing arbitration agreement because the plaintiff did not show that the claims were unsuitable for arbitration).

Both the United States District Courts for the Eastern and Western Districts of Tennessee have reviewed this Arbitration Agreement (and a similar agreement used by Signature affiliates) and have found it enforceable. See *Elizabeth Noffsinger-Harrison v. LP Spring City, LLC et al,* Case No. 1:12-cv-00161 (E.D. Tenn. July 6, 2012); *Harper v. Sycamore Care and Rehabilitation*, Case No. 2:06-cv-02720-BBD-dkv (W.D. Tenn. Jan. 12, 2009); *Gentry and*

*Parmley v. Home Quality Management, Inc. d/b/a Monteagle Care and Rehab*, Case No. 4:06-CV-11 (E.D. Tenn. June 16, 2006); see also *Dixon v. HQM of Gainesville LLC d/b/a University Place Care and Rehabilitation Center*, Case No. 01-05-CH-4349, Circuit Court of the Eighth Judicial Circuit for Alachua County, Florida (Mar. 31, 2006). This Court should do the same.

Signature offered to employ Dillard, and ultimately did, based in part upon her and its promise to submit any employment disputes between them to final and binding arbitration. Dillard accepted that offer when she signed the Arbitration Agreement and the Stakeholder Handbook. The consideration was employment and the financial and other rewards which Dillard received. Her employment claims asserted in her Amended Complaint are covered by the binding Arbitration Agreement that she voluntarily signed. *See* Johnson Decl. at Ex. 2.

The Arbitration Agreement is applicable, valid, enforceable and binding. There is no legitimate legal or factual basis for Dillard to challenge that conclusion. The Arbitration Agreement contains no substantive limitations on Dillard's legal rights. It imposes no onerous procedural requirements. The Arbitration Agreement is mutually binding on both Dillard and Signature. Moreover, the arbitration procedures are governed by the rules of, and conducted by, the AHLA, the nation's largest, nonpartisan, 501(c)(3) educational organization devoted to legal issues in the healthcare field.[5] Simply put, Dillard can pursue the same claims and receive the same remedies in arbitration as she could in this or any court. The Arbitration Agreement is enforceable, and this case must be dismissed as a matter of law.

    2.    <u>The Arbitration Agreement is Sufficiently Broad Enough to Cover All of Dillard's Employment-Related Claims, Including the FMLA.</u>

Dillard argues that the Arbitration Agreement is unconscionable because, "the arbitration agreement does not specifically mention the Family and Medical Leave Act[,] 29 U.S.C. §2601

---

[5]   *See* Footnote 3, above.

et seq. and the regulations promulgated pursuant to the Family and Medical Leave Act." *See* ECF Doc. No. 1-2, p. 2. She is correct factually but incorrect legally. The Arbitration Agreement is sufficiently broad and explicitly covers "all matters directly or indirectly related to [Dillard's] recruitment, employment or termination of employment by [Signature.]" *See* Johnson Decl. at Ex. 2. As a matter of law, Signature was not required to identify specifically the name of every statute or common law claim covered by the Arbitration Agreement in the arbitration agreement. A categorical description such as "all employment claims" is sufficient. *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 757-758 (E.D. Tenn. 2011)

*Brubaker* is instructive and factually analogous. In *Brubaker*, the plaintiff filed a lawsuit in which she alleged multiple legal theories, some of which were not specifically identified as "covered claims" in the plaintiff's signed arbitration agreement. Like Dillard here, the *Brubaker* plaintiff argued that the company's arbitration agreement was not enforceable because it was not broad enough to cover all of her claims filed in federal court. *Id.* at 748. Like Signature here, the *Brubaker* employer noted that the plaintiff signed an "Employment Dispute Arbitration Policy," along with her Employee Handbook, which provided:

> I agree that, in the event I have **any employment related legal claims**, I will submit them to final and binding neutral third-party arbitration, in accordance with the ACE Employment Dispute Arbitration Policy recited above, which is made a part of this agreement.
>
> ---
>
> This policy covers **all employment-related disagreements** and problems that concern a right, privilege or interest recognized by applicable law. Such disputes include claims, demands, disputes, controversies under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and **any other federal, state, or local statute, regulation, ordinance or common law doctrine, regarding unfair competition, employment discrimination or termination of employment.**

*Id.* at 746-748 (emphasis added). The *Brubaker* court dismissed the case in favor of arbitration, holding that "[t]his is obviously a broad provision, as it compels arbitration of 'all employment-related disagreements and problems.'" *Id.* at 758 (*citing Mouton v. Metro. Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir. 1998)) (finding that an arbitration clause stating that the plaintiff employee agreed to arbitrate "any dispute, claim or controversy that may arise between [himself] and the employer" was "broad" enough to encompass Title VII discrimination claims, even though the arbitration agreement did not explicitly mention "employment-related" disputes). The *Brubaker* court further held that "[w]hile the [a]rbitration [a]greement explicitly listed claims subject to arbitration (such as Title VII claims), its scope was not limited to only those claims. In fact, the claims listed in the [a]rbitration [a]greement were just *examples* of claims subject to arbitration." *Id.* (emphasis supplied); *see also Forbes v. A.G. Edwards & Sons, Inc.,* 2009 WL 424146, *8 (S.D.N.Y. Feb. 18, 2009) ("Nothing in the language indicates that the parties intended to limit the scope of arbitration. Even where the arbitration clauses set forth examples of the types of claims that should fall within the scope of the agreement, this is preceded by the language 'including, but not limited to.'"). "Having found that this case involves a broad arbitration clause, there [was] a presumption that [the] [p]laintiff's claims fall within its scope." *Brubaker,* 801 F. Supp. 2d at 758. "Moreover, even if there was doubt regarding whether [the] [p]laintiff's claims fell within the scope of the Arbitration Agreement, the [c]ourt would resolve any doubt in favor of arbitration." *Id.* at 761. The *Brubaker* court then granted the company's motion to compel arbitration as to all of the plaintiff's claims. *Id.* at 762-63.

Here, the Arbitration Agreement to which Dillard agreed similarly provides broad and inclusive language regarding its scope:

10

> This dispute resolution agreement **covers all matters directly or indirectly related to your recruitment, employment, or termination of employment** by the Company, **including, but not limited to**, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("PWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and **any and all claims under federal, state, and local laws and common law** but excluding Worker's Compensation Claims and unemployment benefits.

Johnson Decl. at Ex. 2 (emphasis added). As a matter of law, the language of the Arbitration Agreement is sufficiently broad to cover all of Dillard's claims in her Complaint.[6]

    3.    <u>The Arbitration Agreement is not Adhesive or Unconscionable and Dillard's Voluntary and Knowing Waiver to Trial by Jury is Not Void As Against Public Policy</u>

Dillard makes two additional arguments in her attempt to escape complying with her promises. First, she claims "Defendant's extremely sophisticated . . . arbitration agreement is so one-sided ["is one of adhesion"] [it] denied [Dillard] an opportunity for any meaningful choice," and "is therefore unduly oppressive, unlawful, unfair, deceptive, and otherwise unconscionable." ECF Doc. No. 1-2 at ¶ 3, p. 4-5. Second, she claims "the arbitration provision . . . deprives [her] of her state and federal constitutional rights to a trial by a Judge and jury without her voluntary, knowing and intelligent consent." *Id.* at p. 5. Dillard cannot make that claim unless she can prove both 1) adhesion and 2) unconscionability. *See Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996) ("In Tennessee, a contract of adhesion is only invalid if it is [also] unconscionable"). She cannot do either.

    a.    *The One Page Arbitration Agreement is Not One-Sided or Adhesive*

---

[6] In *Elizabeth Noffsinger-Harrison v. LP Spring City, LLC, et. al* (E.D. Tenn. July 6, 2012), Judge Collier also found that the very same Arbitration Agreement now before this Court was broad enough to cover FMLA claims, holding, "[t]he Court will not, however, make any broader determinations on the merits of Dillard's FMLA claims. Those matters should be decided by the arbitrator."

11

"The Tennessee Supreme Court defines a contract of adhesion as 'a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract.'" *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 478 (6th Cir. 2005) (*quoting Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996) (internal quotation marks omitted). "As this definition makes clear, '[a] contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis.'" *Id.* (*quoting Cooper v. MRM Investment Co.,* 367 F.3d 493, 500 (6th Cir. 2004)). "There must also be an 'absence of a meaningful choice for the party occupying the weaker bargaining position'—*i.e.,* 'the choice to 'leave it' must amount to 'no choice at all.'" *Id.*(*quoting Cooper*, 367 F.3d at 501–02) (internal quotation marks omitted). "In the employment context, this means that an arbitration agreement is not a contract of adhesion unless the employee would be unable to find a suitable job if [s]he refused to agree to arbitrate." *Id.* (internal citations omitted). "The employee bears the burden of showing that other employers would not hire h[er]." *Id.* "Additionally, '[g]eneralizations about employer practices in the modern economy cannot substitute for' evidence relating to a particular employee's ability to find a job in a particular locality." *Id.*

Dillard is college-educated and holds, in addition to her registered nursing license, certifications in Advanced Cardiovascular Life Support ("ACLS"), Basic Life Support ("BLS"), Pediatric Advanced Life Support ("PALS"), and special training in long term care. *See* Johnson Decl. at ¶ 3 and Ex. 1. Prior to working for Signature, Dillard represented to Signature that she was continuously employed at various employers as a Registered Nurse from at least 2005 until January, 2011. *See id.* at Ex. 1. There is no evidence that Dillard would not have been able to

12
11759698.5

find suitable employment, but for, having to sign Signature's arbitration agreement, as she was continuously employed as a Registered Nurse over the previous six years. *Id.*

Dillard's arguments also fail because she cannot prove it is unconscionable. *See Buraczynski*, 919 S.W.2d at 320. Tennessee recognizes two types of unconscionability:

> Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170–71 (Tenn. Ct. App. 2001) (citations omitted). Procedural unconscionability looks at "factors bearing on the relative bargaining position of the contracting parties, includ[ing] their age, education, intelligence, business acumen and experience, . . . [and] whether the terms were explained to the weaker party. . . ." *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (en banc) (citations omitted). "A contract is substantively unconscionable . . . when its terms 'are beyond the reasonable expectations of an ordinary person, or oppressive . . . .'" *Trinity Indus., Inc.*, 77 S.W.3d at 170-71 (*quoting Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996)).

Again, Dillard is a college educated individual with at least six years' worth of experience in the healthcare industry as a Registered Nurse. *See* Johnson Decl. at Ex. 1. Signature's one-page arbitration agreement was given to her during her orientation, and she was allowed time to read, review, and an opportunity to ask questions about the document. *Id.* at ¶ 3. The agreement also expressly advises, "**YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT**" and its provisions are mutually binding on both parties. *Id.* at Ex. 2. (emphasis supplied in document). In addition, Dillard's Employment

13

Application reflects that she previously worked for Signature from 2006 to 2008. *See* Johnson Decl. at Ex. 1.

Dillard appears to argue that the Arbitration Agreement is unconscionable because of inequality in bargaining power. However, the Supreme Court has cautioned, "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer* v., 500 U.S. at 33. Similarly, the Sixth Circuit has noted, "[w]hen a party . . . voluntarily agrees to something in an attempt to obtain employment, they are not being 'forced' to do anything . . . ." *EEOC v. Frank's Nursery & Crafts*, 966 F.Supp. 500, 504 (E.D. Mich. 1997), *rev'd o.g.*, 177 F.3d 448 (6th Cir. 1999). Here, Dillard voluntarily agreed to <u>again</u> work for Signature, as she had previously from 2006 to 2008. *See* Johnson Decl. at Ex. 1. In doing so, she agreed to sign Signature's Arbitration Agreement in an attempt to obtain employment.

The Arbitration Agreement does not contain any substantively unconscionable provisions either. Further, state or federal courts reviewing Signature or its affiliates' similar agreements have enforced it, *see* Signature's Appendix of Authority. The Arbitration Agreement: 1) encouraged Dillard to discuss the agreement with an attorney, 2) gives no unfair advantage to Signature, but applies mutually to both, with each side bound by the arbitrator's decision, 3) clearly informs, by a provision in capital letters, directly above the signature line, that "**BOTH PARTIES WAIVE TRIAL BY JURY**," and, 4) contains no buried terms in this short, one-page document. *See Buraczynski v. Eyring*, 919 S.W.2d 314, 321 (Tenn. 1996) (following same analysis and finding arbitration agreement not to be unconscionable). Finally, Dillard provides <u>no evidence</u> to support her blanket assertion that the Arbitration Agreement is unconscionable because she was "induced either by fraud or misrepresentation." ECF Doc. No. 1-2 at ¶ 3, p. 3.

14

> b.  *Dillard Knowingly and Voluntarily Waived her Right to a Jury Trial; Such a Waiver Does Not Violate Tennessee or Federal Public Policy*

Dillard argues that the Arbitration Agreement is "illegal and void against public policy" because Dillard agreed to waive her right to a jury. ECF Doc. No. 1-2 at ¶ 3, p. 3. She is wrong. The Tennessee Court of Appeals has rejected that argument previously, holding that arbitration agreements that waive the right to a jury do not offend Tennessee public policy. *See Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 778-79 (Tenn. Ct. App. 2010). In *Poole*, "[t]he threshold question before th[e] [c]ourt [was] whether pre-dispute contractual jury waiver is permissible under Tennessee law. *Id.* The court looked to "Article 1, Section 6 of the Tennessee Constitution [which] states that 'the right of trial by jury shall remain inviolate . . . .' *Id.* (*quoting* Tenn. Const. art. 1, § 6). "This constitutional guarantee has appeared in every version of [Tennessee's] constitution and defends one of the most important personal rights found in the Tennessee Declaration of Rights." *Id.* (internal citations omitted). "As a general rule, however, one may waive a constitutional provision enacted for his personal benefit and protection if the waiver does not offend public policy." *Id.* Additionally, "[t]he Tennessee Rules of Civil Procedure expressly provide for certain types of post-dispute jury waiver." *Id.*, *see also* Tenn. R. Civ. P. 39.01(a). The *Poole* court then analyzed "a majority of courts [who had already] address[ed] this issue [and] [] found no bar to the enforcement of pre-dispute jury-waiver provisions. *Poole*, 337 S.W.3d at 778-79. In holding that the pre-dispute agreement to waive a jury trial was enforceable, the *Poole* court went as far to note that "[n]o question exists as to whether Tennessee litigants are permitted to forgo the judicial process altogether if they have entered into a valid, pre-dispute arbitration agreement." *Id.* at 788, n. 4. Dillard's argument as to Tennessee public policy is therefore moot in light of *Poole*, as there is no question that Dillard

and Signature entered into a pre-dispute arbitration agreement on January 27, 2011, as indicated by Dillard's signature therein, which she does not deny signing in her Amended Complaint.

Additionally, the Sixth Circuit Court of Appeals, applying federal and Tennessee state law, has rejected the argument that a jury trial cannot be waived where the employee knowingly and voluntary waived her right to a jury trial. In *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004), the Sixth Circuit held that "[a]s to the 'clear' or 'knowing and voluntary' character of the waiver of a judicial forum, the [] agreement is short, clear and embodied in a separate document." *Id.* at 508. Here too, Dillard has signed a one-page Arbitration Agreement which was a separate document from her Employment Handbook. Additionally, in *Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682 (M.D. Tenn. 2005), this Court held that under Tennessee law, an arbitration provision in employee handbook was valid and enforceable against employee, where the agreement provided ". . . both the Company and [the plaintiff] agree to forego any right we each may have had to a jury trial. . . . The consideration for the waiver was adequate in that there is a mutuality of obligation, as required under Tennessee law." *Id.* at 685. Here, the Arbitration Agreement provisions and waiver of trial by jury is mutually binding on both parties. Finally, in *Philpot v. Tennessee Health Mgmt., Inc.*, 279 S.W.3d 573 (Tenn. Ct. App. 2007), the Tennessee Court of Appeals upheld an arbitration agreement waiver contained in a separate two-page document titled in large bold letters at the top of the page "JURY TRIAL WAIVER AND DISPUTE RESOLUTION PROCEDURE." *Id*. at 582. By signing the agreement, the *Philpot* plaintiff acknowledged that he understood the provisions and had an opportunity to ask questions. *Id.* at 581. Further, it was uncontroverted that the plaintiff was familiar this type of industry practice. *Id.* The Arbitration Agreement here likewise provides, in bold and all capital letters, "**BOTH PARTIES WAIVE TRIAL BY JURY.**" *See* Johnson Decl. at Ex. 2. (emphasis

supplied). The law and cases of Tennessee, this Court, and the Sixth Circuit all hold that such language is a sufficiently clear jury trial waiver to be enforceable and binding upon both parties.

    4.    <u>The Arbitration Agreement is Not Cost Prohibitive.</u>

Dillard speculates that the Arbitration Agreement "has been designed to be cost prohibitive to the average worker, and to otherwise again deny the Plaintiff due process as well as access to the Courts." *See* ECF Doc. No. 1-2 at ¶ 3, p. 4. Dillard has produced no evidence to support her contention that she is "the average worker," or that the costs of arbitration would be "prohibitive." In any case, the Court should not deny Signature's Motion to Compel Arbitration, but instead, require Signature to pay the costs of the arbitration as mandated in *Elizabeth Noffsinger-Harrison v. LP Spring City, LLC; LP Spring City, LLC d/b/a Spring City Care and Rehabilitation Center, and Signature HealthCARE, Inc.*, Case No. 1:12-cv-00161, (E.D. Tenn. July 6, 2012). Additionally, the AHLA has now updated its Rules of Procedure for Arbitration which state, in relevant part:

> FEES AND EXPENSES. Regardless of any contract that states otherwise, the employer will pay the arbitrator's fees and expenses, and any other costs incurred by AHLA to administer the arbitration, unless:
> (1) the employee volunteers to pay a portion of these costs; or
> (2) the arbitrator determines the employee's claim is frivolous.[7]

Therefore, at the outset, Signature will pay the administrative and arbitration expenses (absent the filing fee) per the AHLA's rules, unless Dillard voluntarily agrees to pay her portion of the costs and/or the arbitrator determines Dillard's claims to be frivolous.

### IV.    Conclusion

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470

---

[7]    See Footnote 3, above.

U.S. 213 (1985) (emphasis supplied). For the foregoing reasons, that well established rule of law requires dismissal of Dillard's Amended Complaint in favor of the final and binding arbitration to which the parties long ago agreed.

        s/ C. Hunter Kitchens
        Mark W. Peters (BPR #018422)
        C. Hunter Kitchens (BPR #030493)
        **WALLER LANSDEN DORTCH & DAVIS, LLP**
        511 Union Street, Suite 2700
        Nashville, Tennessee 37219-8966
        (615) 244-6380 (telephone)
        (615) 244-6804 (facsimile)

        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by the Court's ECF system to the following:

David H. Dunaway (BPR #0491)
100 S. Fifth Street
Post Office Box 280
LaFollette, Tennessee 37766
LaFollette: 423/562-7085
Knoxville: 865/524-3670

*Attorney for Plaintiff*

on this the 20th day of May, 2014.

        s/ C. Hunter Kitchens

18
11759698.5
Case 2:14-cv-00039   Document 14   Filed 05/20/14   Page 18 of 18 PageID #: 92