# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| LUCY M. DILLARD, | ) |
| Plaintiff, | ) Case No. 2:14-cv-00039 |
| | ) Judge Sharp |
| v. | ) |
| SIGNATURE HEALTHCARE FENTRESS COUNTY, a SUBSIDIARY AND ASSUMED NAME OF LP JAMESTOWN, LLC, AND SIGNATURE HEALTHCARE, LLC, | ) |
| Defendants. | ) |

## MEMORANDUM

Defendant Signature Healthcare Fentress County, a subsidiary and assumed name of LP Jamestown, LLC and Signature Healthcare, LLC's (collectively, "Defendants" or "Signature") filed a *Motion to Dismiss, or in the Alternative, to Stay the Proceedings and Compel Arbitration* (Docket Entry No. 13), to which Plaintiff Lucy M. Dillard ("Plaintiff" or "Dillard") filed a response (Docket Entry No. 17) and Defendants filed a reply (Docket Entry No. 18). For the reasons discussed herein, Defendants' motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff, a 45 year old female, was employed by Defendants as a registered nurse until she sustained on-the-job injuries and/or occupational diseases on or about January 7, 2013. In the course and scope of her employment as a registered nurse at a nursing home facility, she was exposed to many patients that were sick with respiratory problems. Among the individuals who were seriously ill, included an individual who was hospitalized for bacterial pneumonia and in

---

[1] Unless otherwise noted, the allegations are drawn from Plaintiff's Amended Complaint (Docket Entry No. 1-2).

1

isolation, who was being treated by Plaintiff, among others. Additionally, Plaintiff also encountered fellow workers who had become sick. On or about January 7, 2013, Plaintiff reported becoming ill and thereafter had to be admitted to the Jamestown Regional Medical Center. She was subsequently transferred to the Cookeville Regional Medical Center.

On January 9, 2013, Plaintiff was diagnosed with having sustained pneumonia, sepsis, acute renal failure, as well as congestive heart failure. These injuries and/or diseases required Dillard to take leave from her job pursuant to the Family and Medical Leave Act ("FMLA"). Plaintiff was out of work from January 7, 2013 until she attempted to return to work on or about March 19, 2013.

Upon Plaintiff's return, she learned her work schedule had been changed and her job position had been reassigned. She was demoted from the position of supervisor of nursing to an admissions nurse. Plaintiff visited the Human Resources Director that day and discussed her entitlement to short-term disability benefits while she had been away on medical leave, as well as her intermittent family medical leave, to which she was entitled under the FMLA. The director conceded to Plaintiff that she was entitled to both short-term disability, as well as family medical leave. Plaintiff then proceeded to talk to her immediate supervisor to explain she would be out on intermittent family medical leave as a result of her continued occupational illness and/or disease. Thereafter, Plaintiff's supervisor informed Plaintiff that she was being requested to submit to a drug screen. During the previous two years that Plaintiff had been employed with Defendants, she had never been requested to take a drug test.

Plaintiff did not submit to a drug test. Because of her illness, had Plaintiff submitted to such test, she would have tested positive for a number of medications and prescribed drugs, but Defendants failed and refused to allow Plaintiff to explain her refusal knowing that Plaintiff had

been violently ill for a period of at least nine weeks before her return to work. Ultimately, Plaintiff was terminated, allegedly for failure to participate in an unwarranted drug screening.[2]

Plaintiff initiated this action in the Circuit Court of Fentress County, Tennessee, on March 14, 2014 (Docket Entry No. 1-1). Plaintiff filed an Amended Complaint on April 8, 2014. On or about April 15, 2011, Defendant filed a Notice of Removal causing the action to be removed to this Court on April 14, 2014. (Docket Entry No. 1). Defendants filed the pending motion on May 20, 2014.

## ANALYSIS

Defendants have moved to dismiss, or alternatively, to stay and compel arbitration because, Defendants argue Plaintiff is bound by an Arbitration Agreement ("Arbitration Agreement" or "Agreement"), wherein she allegedly agreed to pursue her employment claims only through final and binding arbitration. (Docket Entry No. 14 at 2). As a matter of law, Defendants contend, Plaintiff "cannot properly pursue her Family and Medical Leave Act ("FMLA"), Tennessee Human Rights Act ("THRA"), and Tennessee Handicap Act, retaliatory discharge and other claims related to her employment before this court or any other." (*Id.*).

Plaintiff argues that the Agreement is an adhesion contract under Tennessee law and, therefore, is unenforceable. Plaintiff contends Defendants' motion is "both inapt and unavailing." (*Id.*).

The Arbitration Agreement states, in pertinent part, the following:

**Arbitration Agreement**

In consideration of the company employing you and the mutual promises set forth herein, you and the company and your and its representatives, successors, and assigns agree to the following:

---

[2] According to Plaintiff, she continuously received good work evaluations and was not criticized, warned, nor disciplined about her work abilities, productivity, or job performance until she sustained the injuries.

(1)  All claims relating to your recruitment, employment with, or termination of employment from the Company shall be deemed waived unless submitted to final and binding arbitration in accordance with the Federal Arbitration Act ("FAA") or, if a court determines the FAA does not apply, by an applicable state arbitration act, in accordance with the rules of the American Health Lawyers Association ("AHLA").  A copy of the AHLA rules is available for review in the office of your Human Resources Director.  If the AHLA ceases providing dispute resolution services, the arbitration proceeding shall be governed by the rules of the American Arbitration Association.  The arbitrator and not a court shall decide whether a dispute is arbitratable, including all claims that fraud or misrepresentation induced the employee to sign this Agreement.

(2)  In the event that either the employee or the company seeks relief in a court of competent jurisdiction for a dispute covered by this Agreement, the other may, at any time within sixty (60) days of the service of the complaint, require the dispute to be arbitrated, and that decision and award of the arbitrator shall be final, binding, and enforceable in courts.

(3) This dispute resolution agreement covers all matters directly and indirectly related to your recruitment, employment, or termination of employment by the Company, including, but not limited to, alleged violations of the Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("PWBPA"), the Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws and common law but excluding Worker's Compensation Claims and unemployment benefits.

(4) In the event any portion of this Agreement shall be determined by a court to be invalid, the remainder of this Agreement shall remain in full force and effect, and this provision shall survive such determination.

(5)  The arbitrator shall have the authority to award the full range of remedies that could be awarded by a court setting in the applicable jurisdiction and applying relevant law including, without limitation and if applicable, and award of attorney's fees and costs.

(6)  This Agreement shall be binding upon your heirs, successors and assigns.

YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT.  IF SO, TAKE A COPY OF THIS FORM WITH YOU. HOWEVER, YOU WILL NOT BE OFFERED EMPLOYMENT UNTIL THIS FORM IS SIGNED AND RETURNED BY YOU.

PLEASE READ THESE PROVISIONS CAREFULLY, BY SIGNING NOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT AND ARE KNOWINGLY AND VOULTARILY AGREEING TO ITS TERMS.

BOTH PARTIES WAIVE TRIAL BY JURY

[SIGNATURE OF PARTIES DATED January 27, 2011]

(Docket Entry No. 16-2, Arbitration Agreement).

**I. Standard of Review**

The issue before this Court is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. (2011). "The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT & T Mobility, LLC v. Concepcion,* —U.S. —, —, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). It reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *Id.* (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010)). The FAA's purpose is to ensure that private arbitration agreements are enforced according to their terms. *Id.* at 1748 (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

The FAA provides that a party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration, and that a written arbitration agreement "shall be valid, irrevocable, and enforceable, upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court must stay proceedings if an issue before the court is arbitrable under an agreement covered by the FAA, *id.* § 3, and the court

must order arbitration if either party fails, neglects, or refuses to comply with the terms of an arbitration agreement, *id*. § 4.

"The Sixth Circuit has repeatedly applied the FAA to arbitration agreements formed in the employment setting." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 378 (6th Cir. 2005). Federal law provides that a party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any U.S. District Court which, would have jurisdiction under Title 28 in a civil action arising out of the controversy between the parties for an order directing that such arbitration proceed in the manner provided for in the agreement. 9 U.S.C. § 4.

Any ambiguities in the contract should be resolved in favor of arbitration. *Huffman v. Hilltop Companies*, LLC, 747 F.3d 391, 395 (6th Cir. 2014). With respect to agreements containing broadly-worded arbitration clauses, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id*.

Statutory claims may be the subject of an arbitration agreement, which is enforceable pursuant to the FAA. *Landis v. Pinnacle Eye Care*, LLC, 573 F.3d 559, 561–62 (6th Cir. 2008). By agreeing to arbitrate a statutory claim, a plaintiff does not forgo the substantive rights afforded by the applicable statute. *Gilmer*, 500 U.S. at 26; *Landis*, 573 F.3d 561–62. The plaintiff only submits to the resolution of his or her claims in an arbitral rather than a judicial forum. *Gilmer*, 500 U.S. at 26. Federal courts apply state law to interpret arbitration agreements so long as the state law is applicable to all contracts. *Dawson v. Rent–A–Center Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012).

Finally, the party opposing arbitration has the burden to prove that there is a genuine issue of material fact regarding the validity of the arbitration agreement. *Brubaker v. Barrett*, 801 F.Supp.2d 743, 750 (E.D.Tenn. 2011). The FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *AT & T Mobility*, 131 S.Ct. at 1746 (citing 9 U.S.C. § 2). Thus, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," *Id*. (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

**II. Application of Law**

In this case, there is no dispute the parties executed the Arbitration Agreement on or about January 27, 2011 under the terms of Tennessee law. Plaintiff initially claims, however, that the Agreement is an unconscionable contract of adhesion, thereby rendering it unenforceable. Because it was a form agreement offered on a "take it or leave it basis," and Plaintiff was unable to find suitable employment without signing it, Plaintiff claims it was one of adhesion. Moreover, she contends this was the most suitable place for her to work, as evidenced by the fact that this was at least the second time that she was trying to secure employment with Defendants. She had worked at other places in between her multiple stints with Defendants, but had been unable to stay with them for various reasons, including family issues and the length of her commute. *See* (Docket Entry No. 17 at 3-4). Defendants contend that although the "Response recites the 'magic words' that Signature was 'the most suitable place for her to work,' she concedes that it was not the only pace she did, in fact work." (Docket Entry No. 18 at 2). And that "her Affidavit or anything else in the record, falls well short of proving that 'other employees would not hire her." (*Id.*).

Tennessee defines an adhesion contract as a standardized contract form offered on essentially a "take it or leave it" basis, without affording the weaker party a realistic opportunity to bargain and under conditions whereby the weaker party can only obtain the desired service (employment) by submitting to the form of the contract. *Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn. 1996) (*cited in Seawright v. American General Financial Services, Inc.,* 507 F.3d 967, 975 (6th Cir. 2007)). A contract is not adhesive merely because it is a standardized form offered on a "take it or leave it" basis. The absence of a meaningful choice for the party occupying the weaker bargaining position must also be present. *Id.* In *Buraczynski,* the court held that the distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms. *Buraczynski,* 919 S.W.2d at 320.

Determining whether a contract is adhesive is fact-intensive, but a threshold factor is the presence or absence of a realistic choice a person has between signing and not signing a particular agreement. *Hardin v. Morningside of Jackson, LLC,* 425 F.Supp.2d 898, 906 (W.D.Tenn. 2006). The employee bears the burden of showing that other employers would not hire him and that he would be unable to find a suitable job if she refused to agree to arbitrate. *Howell v. Rivergate Toyota, Inc.,* 2005 WL 1736582 at —— 2 (6th Cir. July 25, 2005) (citing *Cooper v. MRM Investment Co.,* 367 F.3d 493, 503 (6th Cir. 2004)).

The Court finds that Plaintiff's Response is insufficient to specifically show she would likely have been unable to find suitable employment had she not signed the Agreement with Defendants. In the absence of specific evidence that Plaintiff could not have found other suitable employment, the Arbitration Agreement should not be considered an adhesion contract.

Next, according to Plaintiff, the terms of the Agreement were "unconscionable as to shock the judgment of a reasonable person" in that they are "cost prohibitive, were not allowed

to be fully contemplated by [Plaintiff], and forced her into an adjudication process rigged in favor of [Defendants]." (Docket Entry No. 17 at 5). In support, Plaintiff claims that although "Defendants contend that when she was hired, she was required to go through an orientation, during which she was made to sign an arbitration agreement as a condition to finalizing her position with the defendant," she "was not given time to read and review this document, nor was she given a copy of it." (*Id*. at 2). Plaintiff also challenges the neutrality of the AHLA as well as the costs associated with the organization, contending that because Defendants engage in arbitration with the same group of arbitrators on a routine basis, "this allows them to set up numerous barriers to preclude employees from exercising their legitimate rights at an exorbitant costs . . . [it] is also designed to make enforcing one's rights as an employee cost prohibitive . . . based on the date [Plaintiff] allegedly signed the agreement, she would have to pay over $2,500 to institute an action in arbitration against the defendants. (*Id*. at 5).

Even if the Court had reached the conclusion that the Agreement was one of adhesion, Plaintiff must also demonstrate that the Agreement was unconscionable. Not all adhesion contracts are unenforceable. *Howell* at —— 2 (citing *Buraczynski,* 919 S.W.2d at 320)). In Tennessee, adhesion contracts are unenforceable only when the terms are beyond the reasonable expectations of an ordinary person or oppressive or unconscionable. *Seawright,* 507 F.3d at 976. A contract is unconscionable when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. *Id.* at 977.

The Court concludes that the Arbitration Agreement is not unconscionable. The Agreement is written in plain language that a reasonable lay person could understand. The

Agreement advises employees that they "may wish to consult an attorney prior to signing" the Agreement. It further advises that the potential employee to "read [the] provisions carefully, by signing now, you are attesting that you have read and understood this document . . ." Additionally, a reasonable employee would anticipate that the paperwork she signed at the beginning of her employment would contain some company policy regarding the resolution of employee disputes, including submitting those to arbitration. Even if the Court were to assume the parties had unequal bargaining power, the terms of the Agreement, are not unusually harsh. Moreover, as in the *Giles* case,[3] it is immaterial whether Plaintiff actually read the agreement. Therefore, the Court finds there was no unconscionability in the bargaining process.

As to Plaintiff's contention regarding the AHLA, Defendants maintain that arbitration is not cost-prohibitive, and the AHLA is the largest, not-for-profit organization in the world devoted to legal issues in the healthcare field and Plaintiff's speculation that it is somehow biased against employees is without any factual foundation. (Docket Entry No. 18 at 1). Further, according to Defendants, Plaintiff's contention that "the costs associated with arbitration would deny her due process is moot." She has produced "no proof" that she is unable to pay the costs of arbitration. (Docket Entry No. 14 at 5). In fact, according to Defendants, the rules have now changed so that Signature is required to pay the costs of arbitration per AHLA Section 10.5(a).[4] (Docket Entry No. 14 at 5-6).

---

[3] One who signs a contract in Tennessee without reading it may not subsequently seek revocation on the ground that, because he never knew what the contract said, the waiver was not done knowingly. *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn.Ct.App. 1993) (several citations omitted).

[4] AHLA Section 10.5(a) states, "[r]egardless of any contract that states otherwise, the employer will pay the arbitrator's fees and expenses, and any other costs incurred by the AHLA to administer arbitration, unless (1) the employee volunteers to pay a portion of these costs; or (2) the arbitrator determines the employee's claim is frivolous. *See* American Health Lawyers Association, *Rules of Procedure for Arbitration,* www.healthlawyers.org.

The Court finds that Plaintiff's arguments regarding the AHLA, are indeed, speculative at best. The AHLA is a non-profit entity and Plaintiff has not shown there is a financial relationship between Defendants and the AHLA or that Defendants exercise any power over the AHLA. *See Walker v. Ryan's Family Steak Houses, Inc.,* 400 F.3d 370, 386 (6th Cir. 2005); *McMullen v. Meijer, Inc.,* 355 F.3d 485, 493 (6th Cir. 2004). Further, with respect to costs, the Arbitration Agreement expressly states it must be enforced in accordance with the rules of the AHLA. As Defendants note, the plain language of the AHLA rules require them to pay the costs of arbitration. Furthermore, the Supreme Court has explained that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Thus, if the FLMA permits an award of attorneys' fees and costs, according to the Arbitration Agreement, an arbitrator may award attorneys' fees and costs. Accordingly, Plaintiff has failed to prove the Agreement is unconscionable on this basis. Therefore, the Court finds an enforceable contract exists between the parties.

Finally, Plaintiff argues, because the Agreement did not specifically mention the FMLA, and because Congress intended to prevent a waiver of judicial remedies under the FLMA, arbitration is not the appropriate forum in this matter. (Docket Entry No. 17 at 5). In support, Plaintiff argues the agreement specifically listed several statutory claims being waived by the agreement, and the FMLA was not included. (*Id*. at 7). Further, Congress stated explicitly in the FMLA that the aggrieved party has the right to bring an action in a Federal or State court, while not mentioning arbitration. (*Id.*).

The FAA embodies a liberal federal policy favoring arbitration agreements. *Wynn v. Five Star Quality Care Trust,* 2014 WL 2560603 at * 5 (M.D.Tenn. June 5, 2014). The Court must examine the arbitration language in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration. *Huffman v. Hilltop Companies, LLC,* 747 F.3d 391, 395 (6th Cir. 2014). Likewise, any ambiguities in the contract should be resolved in favor of arbitration. *Id.* With respect to agreements containing broadly-worded arbitration clauses, which this Agreement includes, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.* A party may avoid arbitration, however, by (1) showing the dispute at hand is beyond the scope of the arbitration agreement, or (2) showing the agreement itself is invalid or unenforceable. *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.—Alabama v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

Having decided that the Arbitration Agreement is enforceable, the Court must now determine whether Plaintiff's claims against Defendants fall within the scope of it. The Court must decide whether the Agreement is "broad" or "narrow" in scope. This will determine what test the Court must apply in deciding whether Plaintiff's claims are subject to arbitration. *Brubaker*, 801 F.Supp.2d at 757. In the Sixth Circuit, the test for determining whether a dispute falls within the scope of a broad arbitration clause is if "an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement—along with the presumption in favor of arbitrability and the intent of the

parties." *NCR Corp. v. Korala Assocs., Ltd.,* 512 F.3d 807, 814 (6th Cir. 2008) (quoting *Nestle Waters N. Am., Inc. v. Bollman,* 505 F.3d 498, 505 (6th Cir. 2007)).

Pursuant to the Agreement, Plaintiff and Defendant agreed to submit the following claims to arbitration:

> This dispute resolution agreement covers **all matters directly and indirectly related to your recruitment, employment, or termination of employment by the Company**, including, but not limited to, alleged violations of the Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("PWBPA"), the Reconciliation Act of 1985 ("COBRA"), and **any and all claims under federal, state, and local laws** and common law but excluding Worker's Compensation Claims and unemployment benefits.

(Docket Entry No. 16-2)(emphasis added).

The Court finds this is a broad provision, as it compels arbitration of "all matters directly or indirectly related to [] recruitment, employment, or termination of employment by the Company" and covers alleged violations of "any and all claims under federal, state, and locals laws." *See Brubaker*, 801 F.Supp.2d at 758 (citing *Mouton v. Metro. Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir. 1998) (finding that an arbitration clause stating that the plaintiff employee agreed to arbitrate "any dispute, claim or controversy that may arise between [himself] and the employer" was "broad" enough to encompass Title VII discrimination claims, even though the arbitration agreement did not explicitly mention "employment-related" disputes). While the Arbitration Agreement explicitly listed claims subject to arbitration (such as Title VII claims), its scope was not limited to only those claims. In fact, the claims listed in the Arbitration Agreement were just *examples* of claims subject to arbitration. *See Forbes v. A.G. Edwards & Sons, Inc.,* No. 08–CV–552, 2009 WL 424146, at *8 (S.D.N.Y. Feb. 18, 2009) ("Nothing in the language indicates that

13

the parties intended to limit the scope of arbitration. Even where the arbitration clauses set forth examples of the types of claims that should fall within the scope of the agreement, this is preceded by the language 'including, but not limited to.'").

Additionally, even if there was doubt regarding whether Plaintiff's claims fell within the scope of the Arbitration Agreement, the Court must examine the arbitration language in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration. *Huffman,* 747 F.3d at 395. Plaintiff has failed to persuade the Court that her claims are not subject to arbitration – and has further failed to prove that there is a genuine issue of material fact regarding the validity of the arbitration agreement.

## **CONCLUSION**

Defendant has moved to dismiss this case, or in the alternative, to stay these proceedings and compel Plaintiff to comply with the Arbitration Agreement. Under the FAA, if a court determines a cause of action is covered by an arbitration agreement, it must stay the proceedings until the arbitration is completed. 9 U.S.C. § 3. Therefore, the Court will stay these proceedings pending arbitration.

For all the reasons stated, Defendant's *Motion to Dismiss, or in the Alternative, to Stay the Proceedings and Compel Arbitration* (Docket Entry No. 13) will be granted.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE